FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 1 7 2012 ★

BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
TERRY SMITH,                                    :
                                                :
                            Petitioner,         :
                                                :
              – against –                       :
                                                :
WILLIAM PHILLIPS,                               :
                                                :
                            Respondent.         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**MEMORANDUM, ORDER,**
**& JUDGMENT**

**02-CV-6329**
**04-CV-1725**

**Appearances:**

For petitioner:   Jeffrey G. Pittell
                  299 E. Shore Road
                  Great Neck, NY 11023

For respondent:   Glenn D. Green
                  Suffolk County District Attorney's Office
                  Criminal Courts Building
                  200 Center Drive
                  Riverhead, NY 11901

**JACK B. WEINSTEIN, Senior District Judge:**

I.    Introduction ...................................................................................................2

II.   Factual and Procedural History .......................................................................3

1



A. State Trial Court Proceedings ............................................................................. 3

B. Direct Appeal ...................................................................................................... 7

C. Federal Habeas Proceedings ............................................................................... 8

III. Not a Second or Successive Petition ........................................................................ 11

IV. Deference to State Court Findings is Owed ............................................................. 11

V. Double Jeopardy Does Not Bar Prosecution After Conditional Plea ..................... 13

A. Ability of the Court to Vacate the Plea ............................................................ 13

B. Jeopardy Continues Until All Conditions on a Plea Are Satisfied .................. 14

C. Petitioner's Post-Plea Trial Not Barred ........................................................... 18

VI. Other Pending Claims Are Meritless ....................................................................... 20

VII. Conclusion ................................................................................................................ 20

I. **Introduction**

Before the court now are the merits of Terry Smith's petition for a writ of habeas corpus, initially filed in November 2002, as amended by subsequent filings after directions of the Court of Appeals. *See* Pet.'s Reply Mem. of Law in Further Supp. of Pet. for a Writ of Habeas Corpus 17, No. 04-CV-01725, Doc. Entry 52, Jan. 16, 2012 ("Pet's Reply Mem."); Pet.'s Letter, No. 04-CV-01725, Doc. Entry 3, June 21, 2004 (raising an *Apprendi* claim); Mandate of the Court of Appeals for the Second Circuit, No. 04-CV-01725, Doc. Entry 26, Feb. 28, 2011. The complicated procedural history of this case is summarized below. *See* Part II, *infra.*

Petitioner's attorney correctly identifies the only possibly viable claim remaining in this case: that the New York State trial court may have "violated his right to protection against Double Jeopardy, as guaranteed by the Fifth Amendment of the Constitution." Pet.'s Reply Mem. 17. He contends that this right was violated when the state trial court *sua sponte* vacated his plea of guilty, forcing him to go to trial, whereupon he was convicted and suffered a greater penalty than he would have received had the plea been allowed to stand. *Id.* (The issue of

2

whether the petitioner had effective assistance of counsel during the plea negotiations, and the potential retroactivity of the Supreme Court's recent decisions in *Missouri v. Frye*, No. 10–444, 2012 WL 932020 (Mar. 21, 2012), and *Lafler v. Cooper*, No. 10–209, 2012 WL 932019 (Mar. 21, 2012), has not been raised.)

Respondent moves to dismiss on the ground that petitioner has not exhausted his remedies in state court on these charges. Resp't Reply Mem. of L., No. 04-CV-01725, Doc. Entry 55 (citing 28 U.S.C. § 2254 (b)(1)(A) (stating exhaustion is required)).

Since this long-pending collateral litigation can be promptly decided on the merits, the court prefers to proceed in reliance upon 28 U.S.C. § 2254 (a)(2), which permits the denial of a petition on the merits even though a claim is unexhausted. *Id.* ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in courts of the state.").

For the reasons stated below, all of petitioner's pending claims are dismissed.

## II. Factual and Procedural History

The relevant factual and procedural history is summarized below. *See also Terry Smith v. Scully*, No. 02–CV–6329, 2003 WL 22952848, at *1-3 (E.D.N.Y. Oct. 16, 2003).

### A. State Trial Court Proceedings

The relevant criminal charges arose out of an incident in which petitioner stole a car from a dealership, crashing into a utility pole. *Id.* at *1. When police officers and Emergency Medical Technicians (EMTs) tried to extricate him, he made a U-turn, crashing into the side of a patrol car and injuring one of the EMTs. *Id.*

He was indicted for possession of stolen property on June 23, 1997. On November 15,

1998—the day jury selection for trial on that charge was scheduled to begin—the prosecutor informed the petitioner and the court that it intended to file a separate felony information charging him with an assault in connection with the same incident. Tr. of Plea 6:3-8, Nov. 15, 1998. The judge then asked what the prosecutor's current plea offer was. *Id.* at 7:23-24. The prosecutor stated that he was "looking for a bottom number of a minimum of no less than six with a top number of at least twelve" on both the stolen property charge and the unindicted assault charge. *Id.* at 8:14-16. Petitioner's attorney informed the court that he would be willing to speak to his client about a plea of "three and a half to seven [on the stolen property charge] and the five concurrent [on the assault charge]." *Id.* at 8:19:22. The trial judge agreed that, if petitioner pled guilty to both charges, he would sentence the defendant to "three and a half to seven and five concurrent," with the five year sentence being a determinate term. *Id.* at 10:23-25.

Petitioner was given the opportunity to consult with counsel. He was informed by the trial judge that if he went to trial and was convicted he might face a sentence of fifteen years to life in prison. *Id.* at 11:24 – 12:3. Petitioner rejected the offer.

The court then proceeded with the pre-trial *Sandoval* hearing. At the hearing, the court determined that the prosecution could cross-examine petitioner about prior convictions for burglary and criminal mischief if petitioner chose to testify. *Id.* at 16:1 – 26:24.

Following a brief sidebar, the following exchange occurred:

THE COURT: Let's make it crystal clear as to what transpired here. It's my understanding it was brought forth to the Court that the defendant will enter a plea of guilty to the Criminal Possession of Stolen Property as charges in the indictment and also receive a sentence of three and a half years, S.C.I. charge, Superior Court Information will come down this afternoon charging the defendant with Assault in the Second Degree, felony charge, at which time, accepting his plea, the Court will sentence him to five years' determinate sentence, both sentences to run concurrent.

4

[DEFENSE COUNSEL]: Current.

THE COURT: Together. Is that your understanding?

[GOVERNMENT]: Yes, your Honor.

*Id.* at 31:8-25. Petitioner agreed to plead guilty to both offenses under those terms:

[DEFENSE COUNSEL]: At this time, the defendant will withdraw our previously submitted plea of not guilty and submit a plea of guilty to the charge of Criminal Possession of Stolen Property in the Third Degree. He does this with the understanding, as your Honor had just indicated, that he will be receiving a negotiated sentence of three and a half to seven years on this charge and that *as part of this plea bargain* the District Attorney's Office will be laying in an S.C.I., and the defendant agrees to enter a plea of guilty to Assault in the Second Degree in which he will be receiving a definite sentence or determinate sentence of five years, that the sentences are to run concurrently with each other.
    Is that your understanding, Mr. Smith?

THE DEFENDANT: Yes.

[DEFENSE COUNSEL]: Is that what you wish to do?

THE DEFENDANT: Yes.

*Id.* at 33:11 – 34:8 (emphasis added). From the record, the conclusion can be drawn that the petitioner, his trial counsel, the prosecution, and the trial judge all understood that the plea deal was contingent on petitioner's allocution to the assault charge. *See, e.g., id.* at 46:14-15; 57:4 – 58:8.

The court then took the plea to the stolen property charge:

THE COURT: Mr. Smith, do you wish to change your plea from not guilty to the charge of Criminal Possession of Stolen property and enter a plea not to – of guilty to that charge as to the felony?

THE DEFENDANT: Yes.

THE COURT: And do you also wish to change your plea this afternoon on the – or enter a plea this afternoon to the S.C.I., plea of Assault in the Second Degree this afternoon also?

5

> THE DEFENDANT: Yes.
>
> [DEFENSE COUNSEL]: We understand, your Honor, that this plea is based upon the fact that they will be laying in the assault two and that will be part of the plea.

*Id.* at 37:5-20.

> THE COURT: Do you understand what you're pleading guilty to at this time and what you will enter a plea to this afternoon on the S.C.I. plea?
>
> THE DEFENDANT: Yes.

*Id.* at 39:8-12.

> THE COURT: Concerning your sentence, has any promises been made to you with the exception of the one that I said that I would sentence you to three and a half to seven on this charge and five years determinate on the assault charges on the S.C.I. this afternoon?
>
> THE DEFENDANT: No.

*Id.* at 40:3-9; *see also* 63:8-15.

At his sentencing approximately seven weeks later, petitioner stated that he wanted to withdraw his plea with respect to the stolen property charge. Sentencing Tr. 4:25 – 5:1, Jan. 7, 1998. He claimed he had no memory of pressing the accelerator on the car and injuring the EMT; at the time of the incident, his brain was hemorrhaging as a result of the crash, an injury that subsequently left him unconscious for several days. He told the court that he did not "feel responsible for the assault." *Id.* The prosecutor stated that if petitioner were to withdraw his plea, "all our offers on both charges" would be withdrawn and the matter would be set down for trial. *Id.* at 5:23-25. Petitioner insisted the wished to withdraw his plea only on the assault charge and "would take the possession." *Id.* at 7:24-25; *see also* 9:6-7 (stating that he wished to withdraw the plea "on the assault charge"). The court made it clear that the petitioner would not be permitted withdraw his plea as to the assault charge alone:

6

THE COURT: . . . Now, if you're going to request a withdrawal of your plea on that charge?

THE DEFENDANT: On the assault charge. Yes.

THE COURT: That was a package deal. The two went together. I had asked you at the time are you of the opinion that it was in the best interests to take the plea as offered by the Court, and you told me yes. And your attorney agreed with you.
Now, I have no problem. If you want to withdraw the plea to the assault charge we're going to go to trial on a criminal possession of stolen property. And I'm going to tell you now, if you get convicted by a jury, you're going to get the maximum sentence.
. . .
You tell me what you want to do?

THE DEFENDANT: I'm going to trial. I'm not taking no assault charge.

. . .

THE COURT: You want to withdraw the plea? *You're going to go to trial on the initial charges.*

THE DEFENDANT: Everything let go . . . . You're going to try me for assault. . .

·

*Id.* at 9:3 – 11:6 (emphasis added).

Petitioner went to trial. He was convicted of third degree possession of stolen property, a D-felony. He was sentenced as a persistent felony offender to seventeen and a half years to life in prison.


B. **Direct Appeal**

In his appeal to the Appellate Division, Second Department, petitioner argued that the trial court acted improperly by *sua sponte* withdrawing the guilty plea he had previously entered. Brief for App. at 13-16, *People v. Terry Smith*, 727 N.Y.S.2d 891 (2001) (No. 98-04106). The claim was not framed as one implicating double jeopardy. His conviction was affirmed in July 2001. *People v. Terry Smith*, 727 N.Y.S.2d 891 (2001). The New York Court of Appeals denied

7

leave to appeal in October 2001. *People v. Terry Smith,* 761 N.E.2d 5 (N.Y. 2001).

### C. **Federal Habeas Proceedings**

Petitioner filed a habeas petition in this court in November 2002. *See* Pet. for Writ of Habeas Corpus, No. 02–CV–6329, Doc. Entry 1, Nov. 27, 2002. He appeared *pro se.* In his application for a writ of habeas corpus, petitioner claimed that "(1) the sentencing court abused its discretion when it sentenced petitioner, punishing him for having insisted on his right to a trial; (2) the trial court improperly withdrew petitioner's guilty plea *sua sponte;* (3) the trial court's *Sandoval* ruling allowing the prosecution to impeach petitioner with his past felony convictions in the event he testified was improper; and (4) the prosecution failed to prove beyond a reasonable doubt that the value of the stolen property exceeded $3000." *Terry Smith*, 2003 WL 22952848, at *3.

His petition was denied in October 2003. *Id.* That same month, petitioner filed a letter requesting the court "to set aside [denial of] his habeas corpus [petition] and [to grant] permission to consolidate his 40.20 motion w/the habeas corpus." Pet. Letter, No. 02–CV–6329, Doc. Entry 22, Nov. 3, 2003. On December 4, 2003, he filed a notice of appeal. Notice of Appeal, No. 02–CV–6329, Doc. Entry 24, Dec. 4, 2003. A mandate was issued by the Court of Appeals for the Second Circuit dismissing the appeal on April 22, 2004. Mandate of the Court of Appeals for the Second Circuit, No. 02-CV-6329, Doc. Entry 26, Apr. 22, 2004.

In April 2004, Smith filed another petition challenging the same detention that was the subject of his first petition. Pet. for Writ of Habeas Corpus, No. 04-CV-01725, Doc. Entry 1, Apr. 24, 2004. This petition was dismissed pending an order from the Court of Appeals for the Second Circuit authorizing the district court to consider the application as a second or successive

8

petition. Order & J., No. 04-CV-01725, Doc. Entry 4, June 29, 2004.

In June 2004, petitioner filed a letter with the court suggesting reasons his petition, even if successive, should be granted. Pet. Letter, No. 04-CV-01725, Doc. Entry 3, June 24, 2004. He also raised an *Apprendi* issue. *Id.* This letter was treated as a motion for a rehearing. *See* Mem. & Order, No. 04-CV-01725, Doc. Entry 5, July 22, 2004. Rehearing was denied, *id.*, on the ground that "Apprendi is not retroactive. *See United States v. Coleman*, 329 F.2d 77, 90 (2d Cir. 2003)." *Id.*

A notice of appeal was filed on July 28, 2004. No. 04-CV-01725, Doc. Entry 6, July 28, 2004.

On November 2, 2004, the Court of Appeals for the Second Circuit issued its mandate. *See* Mandate of the Court of Appeals for the Second Circuit, No. 04-CV-01725, Doc. Entry 11, Dec. 1, 2004. It held that the April 2004 petition was not a second or successive petition because, when it was filed, the initial petition was still pending on appeal. *Id.* The mandate vacated both this court's October 2003 memorandum and order and its June 2004 order and judgment. *Id.* It instructed the court to construe petitioner's filing as a motion to amend and to "consider whether the issues raised in the motion to amend relate back to the issues raised in the original 28 U.S.C. § 2254 petition." *Id.*

At a hearing in this court in March 2005, it was determined that the motion to amend "relates back to the issues raised in the original 28 U.S. Code Section 2254 petition." *See* Tr. of Hr'g, No. 04-CV-01725, Doc. Entry 40, Mar. 3, 2005. The substantive merits of petitioner's amended claim were not decided. *Id.* There was a brief discussion of the *Apprendi* claim; counsel disagreed on whether petitioner could have raised an *Apprendi* claim in his original petition. *Id.* Counsel for petitioner argued that the court's reliance on *Coleman* in its July 2004

order denying rehearing was misplaced. *Id.* It was suggested to petitioner's counsel that he bring the matter before the Court of Appeals for the Second Circuit. *Id.* The case was closed. Doc. Entry 37, Mar. 10, 2005.

On November 15, 2010, the Court of Appeals for the Second Circuit stayed petitioner's request that this court consider a second or successive petition. Order of the Court of Appeals for the Second Circuit, No. 04-CV-01725, Doc. Entry 23, Nov. 15, 2010.

While petitioner's motion to amend was pending before this court, petitioner filed another motion in the Court of Appeals for the Second Circuit seeking an order authorizing the district court to hear a successive § 2254 petition. *See* Mandate of the Court of Appeals for the Second Circuit, No. 04-CV-01725, Doc. Entry 26, Feb. 28, 2011. In its 2011 mandate, the Second Circuit instructed this court to treat petitioner's motion as another motion to amend. *Id.* "Once the district court determines whether to grant Petitioner leave to amend his § 2254 petition to assert the claims in his present application filed in this Court, it should also conduct all further proceedings necessary for disposition of all the issues in the currently pending § 2254 petition (including any new issues added by amendment) and enter a final judgment in the case reflecting that disposition." *Id.*

In light of the current mandate, the merits of petitioner's *Apprendi* claim must be decided, as well as the claims raised in his initial 2002 habeas petition. Raised in petitioner's most recent moving papers is the issue of whether withdrawal of the defendant's guilty plea and subsequent prosecution violated his rights under the Double Jeopardy Clause; this is the issue now being pressed by petitioner.

10

III.    **Not a Second or Successive Petition**

A ruling is required on the merits of petitioner's initial 2002 habeas petition.  Petitioner's

double jeopardy claim, raised for the first time in his present attorney's reply papers, is construed

as a motion to amend his pending habeas petition.  Since this claim has not previously been

finally adjudicated on the merits by a federal court, it will not be interpreted as constituting a

second or successive habeas petition.  *See Vasquez v. Parrott*, 318 F.3d 387, 389-90 (2d Cir.

2003) (discussing application of bar on second or successive habeas petitions).


IV.    **Deference to State Court Findings is Owed**

A federal court may grant a writ of habeas corpus to a state prisoner on a claim that was

"adjudicated on the merits" in state court if it concludes that the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  An "adjudication on the merits" is a substantive, rather than a procedural,

resolution of a federal claim.  *See, e.g., Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir. 2001)

(citing, *e.g., Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir. 1999)).

A state court's conclusions of law are entitled to deference under AEDPA.  *See* 28 U.S.C.

§ 2254(d).  Also entitled to weight are state court findings of fact.  28 U.S.C. § 2254(e)(1)

(stating that state court factual findings may not be disturbed except upon a showing of "clear

and convincing evidence").  If a federal claim has not been adjudicated on the merits,

conclusions of law and mixed findings of fact and conclusions of law are reviewed de novo.

11

*Torres v. Berbary,* 340 F.3d 63, 68 (2d Cir. 2003).

AEDPA, by its own terms, applies broadly to "a determination of a factual issue by a

State court," without regard to whether that determination was made at the trial or appellate

level.  28 U.S.C. § 2254(e)(1).  "The fact-findings of the trial court are subject to a 'presumption

of correctness'" under 28 U.S.C. § 2254(e)(1).  *Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir.

2003); *see also Channer v. Brooks,* 320 F.3d 188, 195-96 (2d Cir. 2003) (deferring to findings of

the state trial court in its determination of defendant's motion for rehearing).  District courts have

deferred to state trial courts' findings of fact in a variety of contexts.  *E.g. Shaheed v.

Martuscello*, No. 10 Civ. 3288, 2011 WL 73144, at *2 (E.D.N.Y. Jan. 10, 2011) (deferring to

state trial court's findings as to credibility of prosecution's reason for striking juror in *Batson*

challenge); *Long v. Connolly*, No. 10 Civ. 0715, 2010 WL 3463140, at *2 (E.D.N.Y. Aug. 30,

2010) (stating that trial court's findings as to voluntariness of confession in suppression motion

are entitled to deference).

A habeas court may apply the presumption of correctness to factual findings (including

credibility determinations) that were not explicitly stated by a trial court but could be inferred

from its legal conclusion.  *Sorto v. Herbert*, 364 F. Supp. 2d 240, 249 (E.D.N.Y. 2004); *see also,

e.g., Marshall v. Lonberger,* 459 U.S. 422, 433-34 (1983) (finding that 28 U.S.C. § 2254(d)

requires federal courts to accord deference to implied as well as express findings of fact);

*Whitaker v. Meachum,* 123 F.3d 714, 715 (2d Cir. 1997) (stating that, on federal collateral

review, "deference is owed to implied as well as express findings of fact" (internal quotations

omitted).

## V.   Double Jeopardy Does Not Bar Prosecution After Conditional Plea

Petitioner claims, as he did on direct appeal, that he only intended to withdraw his plea as to the assault charge, and that the state trial court judge improperly vacated his plea as to the stolen property charge *sua sponte*. He alleges that his rights under the Double Jeopardy Clause were violated when he was forced to go to trial on the stolen property charge.

Because his double jeopardy claim was not before the state court, it is presumed that the Appellate Division did not consider the implications of that clause in making its determination. Since no double jeopardy issue was clearly raised until the petitioner's most recent amended collateral attack, both issues of law and mixed findings of fact and conclusions of law are reviewed *de novo*. *Berbary*, 340 F.3d at 68.

Petitioner's claim is without merit. While jeopardy attaches at the moment of a guilty plea, it does not end until all of the conditions of a plea have been satisfied.

### A.  Ability of the Court to Vacate the Plea

Under certain circumstances, New York State law guarantees a defendant a right to plead guilty. N.Y. Crim. Proc. L. § 220.10(2) ("Except as provided in subdivision five, the defendant may enter a plea of guilty to the entire indictment."). Moreover, in the absence of fraud, a New York State trial judge generally may not vacate a validly accepted guilty plea *sua sponte* over the objections of the defendant. *United States ex rel. Selikoff v. Commissioner of Correction of N. Y.,* 524 F.2d 650, 653 n.1 (2d Cir. 1975) (citing *People v. Damsky*, 366 N.Y.S.2d 13 (1st Dept. 1975); *People v. Griffith*, 349 N.Y.S.2d 94 (1st Dept. 1973); *Sekaloff v. Hogan*, 342 N.Y.S.2d 417 (1st Dept. 1973)); *see also Matter of Campbell v. Pesce,* 456 N.E.2d 806, 808 (N.Y. 1983) ("In no instance have we recognized a court's inherent power to vacate a plea and sentence over

13

defendant's objection where the error goes beyond mere clerical error apparent on the face of the record and where the proceeding has terminated by the entry of judgment."); *People v. Rodriguez*, 811 N.Y.S.2d 752, 754-55 (2d Dep't 2006) (finding that trial court did not have the inherent right to vacate plea).

Federal habeas corpus relief, however, does not lie for mere errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The United States Constitution does not guarantee criminal defendants an absolute right to have a guilty plea accepted. *Santobello v. New York*, 404 U.S. 257, 262 (1971); *North Carolina v. Alford*, 400 U.S. 25, 38 n. 11 (1970); *Lynch v. Overholser*, 369 U.S. 705, 719 (1962); *see also United States v. Torres-Echavarria*, 129 F.3d 692, 695 (2d Cir. 1997) ("A trial judge is not required to accept every constitutionally valid (i.e., knowing, voluntary and intelligent) guilty plea merely because a defendant wishes so to plead, and may reject a plea in the exercise of sound judicial discretion."). A *sua sponte* withdrawal of a guilty plea by the state trial judge could thus only permit habeas relief if it violated another federal right, such as the prohibition on double jeopardy.

## B.  Jeopardy Continues Until All Conditions on a Plea Are Satisfied

The Double Jeopardy Clause of the Fifth Amendment provides that no person "shall . . . be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 498 (1984) (citing *Brown v. Ohio*, 432 U.S. 161, 165 (1977)); *see also Morris v. Reynolds*, 264 F.3d 38, 49 (2d Cir. 2001) ("[T]he double jeopardy bar prohibits not only multiple punishments for the same

14

offense, but also a second prosecution following conviction.").

"A double jeopardy inquiry must be conducted with the purposes served by the Clause in mind." *United States v. Podde*, 105 F.3d 813, 816 (2d Cir. 1997).

> The constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense. . . . The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States*, 355 U.S. 184, 187-88 (1957).

A guilty plea constitutes a conviction for the purposes of double jeopardy. *See Kercheval v. United States*, 274 U.S. 220, 223 (1927) ("[A guilty plea] is itself a conviction. Like a verdict of a jury it is conclusive. More is not required; the court has nothing to do but give judgment and sentence."); *Morris*, 264 F.3d at 48 ("The Supreme Court has long held that a guilty plea constitutes a conviction."). That fact alone, however, does not answer the question of whether petitioner's subsequent trial on the assault charge following his initial plea of guilty constituted double jeopardy.

In determining whether the Double Jeopardy Clause prohibits a particular prosecution, it is useful "to define a point in criminal proceedings at which the constitutional purposes and policies are implicated by resort to the concept of 'attachment of jeopardy.'" *Serfass v. United States*, 420 U.S. 377, 388 (1975). As a general rule, jeopardy attaches when a guilty plea is accepted. *United States v. Aliotta*, 199 F.3d 78, 83 (2d Cir. 1999); *see also United States v. Cambindo Valencia*, 609 F.2d 603, 637 (2d Cir. 1979) ("[I]t is axiomatic of the double jeopardy clause that jeopardy attached once [defendant's] guilty plea was accepted.").

15

Yet "the conclusion that jeopardy has attached begins, rather than ends, the inquiry as to whether the Double Jeopardy Clause bars retrial." *Illinois v. Somerville*, 410 U.S. 458, 467 (1973). Limits are imposed in order to prevent criminal defendants from using "the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution on the remaining charges." *Johnson*, 467 U.S. at 502. There is thus no double jeopardy when a mistrial is properly declared, *cf. Gori v. United States*, 367 U.S. 364 (1961); or where a conviction is later overturned for a reason other than insufficiency of the evidence, *Burks v. United States*, 437 U.S. 1, 14-18 (1978). A subsequent prosecution is part the single, initial jeopardy in which the defendant was placed when he pled guilty.

The Court of Appeals for the Second Circuit has stated that where "certain circumstances" occur after a guilty plea, "jeopardy is not deemed to attach at the time of a guilty plea." *United States v. Olmeda*, 461 F.3d 271, 279 n.7 (2d Cir. 2006). What those "circumstances" are is not fully defined. Retrial is not barred "where a defendant subsequently withdraws his plea." *Olmeda*, 461 F.3d at 279 n.7; *Podde,* 105 F.3d at 817 ("Whatever the defendant's motivation for pleading guilty and for withdrawing his plea, his voluntary choice to do so releases the government from its obligation not to prosecute and there is no double jeopardy bar to retrying him on the charges in the original indictment."). Nor does it bar reprosecution when a defendant successfully challenges a plea to lesser charges. *Podde,* 105 F.3d at 816-17. If the plea fails to dispose of all of the charges pending against a defendant, a subsequent prosecution on the remaining charges does not constitute double jeopardy. *Johnson,* 467 U.S. at 501 (holding that defendant's subsequent prosecution was not barred by the Double Jeopardy Clause; since the defendant "offered only to resolve part of the charges against him" by his plea, not the entire case against him, the defendant had no interest in finality, and the second

16

prosecution did not infringe on his rights); *see also Morris*, 264 F.3d at 50 (analyzing *Johnson*
and concluding that where "the defendant ha[s] no interest in finality, since he offered to resolve
only part of the charges against him, the Double Jeopardy Clause d[oes] not restrain" a second
prosecution).

Most relevant to this case, if a plea is conditional—for example, if it is dependent upon
cooperation with the government, *Ricketts v. Adamson,* 483 U.S. 14 (1987), preservation of a
pretrial ruling for appeal, *e.g. United States v. Henriquez,* 731 F.2d 131, 136 (2d Cir. 1984), or
on the findings of a pre-sentence report, *Rizzo v. Rock,* No. 08-CV-269, 2009 WL 385453, at *4
(W.D.N.Y. Feb.13, 2009), *Matthews v. Keane,* No. 94 CIV. 2815, 1995 WL 459251, *3
(S.D.N.Y. Aug. 3, 1995)—jeopardy continues until all of the conditions have been satisfied.

In *Ricketts*, for example, a criminal defendant, John Adamson, charged with first degree
murder agreed to plead guilty to the lesser offense of second degree murder in exchange for
testifying fully "in any Court, State or Federal, when requested by proper authorities against any
and all parties involved in the murder" of his alleged victim, Donald Bolles. *Ricketts,* 483 U.S.
at 3-4. The plea agreement provided that a failure to so testify would nullify the agreement and
cause the automatic reinstatement of the first-degree murder charge. *Id.* at 4. Adamson testified
against two other individuals, Max Dunlap and James Robinson, who were accused of murdering
Bolles, and these individual were convicted. *Id.* Adamson was then sentenced pursuant to his
plea agreement. *Id.* Dunlap and Robinson's convictions were later reversed, and their cases
were remanded for retrial. *Id.* When Adamson refused to testify against Dunlap and Robinson at
their retrial, the state deemed him to be in breach of his plea agreement and filed a new
information against him, charging him with first-degree murder. *Id.* at 4-5. He challenged his
subsequent conviction and death sentence on double jeopardy grounds. *Id.* at 7. The Supreme

17

Court denied his claim, declaring that, while "the Double Jeopardy Clause, absent special circumstances, would have precluded prosecution of respondent for the greater charge on which he now stands convicted," Adamson's "breach of the plea arrangement to which the parties agreed removed the double jeopardy bar." *Id.* at 8.

> Under the terms of the plea agreement, both parties bargained for and received substantial benefits. . . . [Adamson] knew that if he breached the agreement he could be retried . . . . In a case such as this the defendant, by deliberately choosing to seek termination of the proceedings against him on a basis unrelated to factual guilt or innocence of the offense of which he was accused, suffers no injury cognizable under the Double Jeopardy Clause. . . . [T]he Double Jeopardy Clause . . . does not relieve a defendant from the consequences of his voluntary choice.

*Id.* at 8-10 (internal citations and quotations omitted).

### C. Petitioner's Post-Plea Trial Not Barred

Since petitioner's guilty plea was conditional on pleading to both the stolen property count in the indictment and an unindicted assault charge, and petitioner breached that agreement, his subsequent trial did not violate the Double Jeopardy Clause.

Petitioner's claim that the trial court judge withdrew his plea *sua sponte* was raised before the Appellate Division. The basis for that court's affirmance of petitioner's conviction is unclear. *Terry Smith*, 727 N.Y.S. 2d at 893 (stating only that "defendant's remaining contentions are without merit"). It cannot be determined whether that court found that the state trial judge did not withdraw the plea *sua sponte,* or that a *sua sponte* withdrawal did not violate petitioner's rights.

It is apparent, however, that the state trial judge, as well as all counsel and the defendant himself, understood that defendant-petitioner's promised sentence was conditional on his pleading guilty to both the stolen property charge contained in the indictment and the unindicted

assault charge. *See, e.g.,* Tr. of Plea 31:8-25, Nov. 15, 1998; Sentencing Tr. 9:3 – 11:6, Jan. 7,

1998. The implied factual finding of the state trial judge to that effect is entitled to deference.

The Appellate Division did not disturb this finding. *Terry Smith*, 727 N.Y.S. 2d at 893.

A searching review of the record reveals no reason to disturb this state court finding of an

understanding of the condition by the defendant. The transcripts of the pre-trial hearing show

that those present understood that the plea agreement was contingent upon petitioner's plea of

guilty to both charges. The statements of the trial court judge, the prosecutor, and defense

counsel are unambiguous on this point. The defendant himself acknowledged the conditional

nature of the plea agreement:

> THE COURT: Do you understand what you're pleading guilty to at this time [the
> stolen property charge] and what you will enter a plea to this afternoon on the
> S.C.I. plea?
>
> THE DEFENDANT: Yes.

Tr. of Plea 39:8-12, Nov. 15, 1998.

> THE COURT: Concerning your sentence, has any promises been made to you
> with the exception of the one that I said that I would sentence you to three and a
> half to seven on this charge and five years determinate on the assault charges on
> the S.C.I. this afternoon?
>
> THE DEFENDANT: No.

*Id.* at 40:3-9; *see also* 63:8-15. The fact that petitioner later tried to withdraw his guilty plea as

to the assault charge alone does not refute the conclusion that petitioner, like the trial judge,

understood this to be a "package deal." Sentencing Tr. 9:3 – 11:6, Jan. 7, 1998.

Petitioner voluntarily chose to breach the terms of his plea agreement by withdrawing his

plea to the assault charge. Even if the state trial judge withdrew petitioner's plea as to the stolen

property charge *sua sponte*, his trial on those charges did not put him twice in jeopardy. Rather,

the original jeopardy in which he was placed by his initial guilty plea continued until his

19

conviction at trial.  His double jeopardy claim is without merit.

VI.     **Other Pending Claims Are Meritless**

As conceded by his attorney, petitioner's *Apprendi* claim has no basis.  Pet. Reply Mem.

16.  The Court of Appeals for the Second Circuit has determined that imposition of a sentence

under the New York State Persistent Felony Offender statute is not an objectively unreasonable

application of clearly established federal law.  *See Portalatin v. Graham*, 624 F.3d 69 (2d Cir.

2010) (en banc), *cert. denied* 131 S.Ct. 1693 (2011).

As to the other claims raised in petitioner's original 2002 habeas petition, vacated by the

Second Circuit, the court incorporates and adopts the reasoning in its October 16, 2003 Order

and Judgment.  *Smith*, 2003 WL 22952848, at *3.  For the reasons stated therein, those claims

are also dismissed.

There remains no other non-frivolous issue.

VII.    **Conclusion**

The petition is dismissed.  A certificate of appealability is granted in light of the novel

double jeopardy claim.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: Brooklyn, New York
       April 16, 2012

20